**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**JAMES G. TOUHEY, JR.**
Director
Torts Branch, Civil Division
**KEVIN DANIELSON, OSB #065860**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
**CONOR KELLS, NJB #2781-2004**
Senior Trial Counsel
conor.kells@usdoj.gov
U.S. Department of Justice
Torts Branch, Civil Division
175 N St. NE
Washington, D.C. 20001
Telephone: (202) 616-4400
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **SAM FRIEDENBERG, personal representative of the estate of MARC SANFORD**, *et al.*, | Case No. 6:18-cv-00177-MK |
| Plaintiffs, | **UNITED STATES' STATEMENT OF INTEREST** |
| **v.** | |
| **LANE COUNTY, *et al.*,** | |
| Defendants. | |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF THE CASE ......................................................................................... 1

STATUTORY BACKGROUND ...................................................................................... 4

    1. 1961 – Federal Drivers Act .................................................................................... 5

    2. 1965-1976 – Agency-Specific Malpractice Immunity Statutes .............................. 7

    3. 1988 – The Westfall Act ........................................................................................ 9

    4. 1992-1995 – Federally Supported Health Centers Assistance Act ........................ 11

POSITION OF THE UNITED STATES ....................................................................... 18

    I.     THE ATTORNEY GENERAL DECLINES TO INTERVENE IN THIS
            CASE AND TO SEEK THE SUBSTITUTION OF THE UNITED
            STATES AS THE PARTY-DEFENDANT FOR TWO REASONS ................. 18

            A.     Notifying the Springfield Municipal Court that Michael Bryant Was
                     in Violation of the Terms of His Probation Was Not the Provision of
                     a Service as to Which Defendants Were Deemed to be Public Health
                     Service Employees for Purposes of Section 224 of the Public Health
                     Service Act ......................................................................................... 18

            B.     Section 224 of the Public Health Service Act Confers No Protection
                     on Defendants Because Plaintiffs' Claims Arise Out of
                     Misrepresentation and Therefore This Case is One in Which No
                     Remedy Against the United States is Available .................................... 20

    II.    DEFENDANTS CANNOT UTILIZE 42 U.S.C. § 233(l)(2) AS A
            VEHICLE TO CHALLENGE THE ATTORNEY GENERAL'S
            DECISION NOT TO INTER-VENE AND REQUEST THAT THE
             UNITED STATES BE SUBSTITUTED AS THE PARTY-DEFENDANT ..... 22

CONCLUSION ............................................................................................................. 29

**TABLE OF AUTHORITIES**

**PAGE(s)**

**CASES**

*Adams v. Jackel*, 220 F. Supp. 764 (E.D. N.Y. 1963) ........................................................ 6

*Bates v. Carlow*, 430 F.2d 1331 (10th Cir. 1970) ........................................................ 7, 8

*Bland v. Britt*, 271 F.2d 193 (4th Cir. 1959) ........................................................ 5

*Blitz v. Boog,*, 328 F.2d 596 (2d Cir. 1964) ........................................................ 7

*Brenner v. Kelly*, 201 F. Supp. 871 (D. Minn. 1962) ........................................................ 7

*Carlson v. Green*, 446 U.S. 14 (1980) ........................................................ 7

*El Rio Santa Cruz Neigh. Health Ctr. v. U.S. Dept. of Health & Hum. Servs.*,
     396 F.3d 1265 (D.C. Cir. 2005) ........................................................ 28, 29

*Gartner v. Lombard Bros.*, 197 F.2d 53 (3d Cir. 1952) ........................................................ 24

*Government Emp. Ins. Co. v. Ziarno*, 273 F.2d 645 (2d Cir. 1960) ........................................................ 5

*Gustafson v. Peck*, 216 F. Supp. 370 (N.D. Iowa 1963) ........................................................ 23

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) ........................................................ 23

*Henderson v. Bluemink*, 511 F.2d 735 (D.C. Cir. 1977) ........................................................ 8

*Hui v. Castaneda*, 559 U.S. 799 (2010) ........................................................ 23

*Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977) ........................................................ 8

*Jones v. Polishuk*, 252 F. Supp. 752 (E.D. Tenn. 1965) ........................................................ 24

*K.C. v. Cal. Hosp. Med. Ctr.*, Case No. 2:18-CV-06619-RGK-ASx,
     2018 WL 5906057 (C.D. Cal. Nov. 8, 2018) ........................................................ 28, 29

*Lawrence v. United States*, 340 F.3d 952 (9th Cir. 2003) ........................................................ 21

*Leab v. Chambersburg Hosp.*, 230 F.R.D. 395 (M.D. Pa. 2005) ........................................................ 21

*Lemley v. Mitchell*, 304 F. Supp. 1271 (D. D.C. 1969) ................................. 24, 25

*Levin v. Taylor*, 464 F.2d 770 (D.C. Cir. 1972) .................................................... 23

*Levin v. United States*, 568 U.S. 503 (2013) ........................................... 4, 8, 21

*Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir. 1983) ............................................ 9, 22

*Perez v. United States*, 218 F. Supp. 571 (S.D.N.Y. 1963) ................................. 23

*Prince v. Creel*, 358 F. Supp. 234 (E.D. Tenn. 1972) ........................................ 24

*Proietti v. Levi*, 530 F.2d 836 (9th Cir. 1976) .................................................... 25

*Q. v. Cal. Hosp. Med. Ctr.*, Case No. CV-17-7917-R, 2018 WL 1136568
 (C.D. Cal. Mar. 1, 2018) ..................................................................... 28, 29

*Seiden v. United States*, 537 F.2d 867 (6th Cir. 1976) .................................. 24, 25

*Sheridan v. United States*, 487 U.S. 392 (1988) ................................................ 22

*Smith v. DiCara*, 329 F. Supp. 439 (E.D. N.Y. 1971) ..................................... 6, 22

*United States v. Orleans*, 425 U.S. 807 (1976) ................................................... 4

*United States v. Smith*, 499 U.S. 160 (1991) .......................................... 4, 8, 23, 28

*Vendetti v. Schuster*, 242 F. Supp. 746 (W.D. Pa. 1965) ..................................... 7

*Westfall v. Erwin*, 484 U.S. 292 (1988) ............................................................. 9

*Willson v. Cagle*, 694 F. Supp. 713 (N.D. Cal. 1988) ......................................... 6

**STATUTES**

5 U.S.C. § 701 .................................................................................................. 25

10 U.S.C. § 1089 ................................................................................................ 7

PAGE(s)

10 U.S.C. § 1089(a)-(d) ................................................................. 8

22 U.S.C. § 817 ........................................................................... 7

22 U.S.C. § 2702 ......................................................................... 7

22 U.S.C. § 2702(a)-(d) ............................................................... 8

25 U.S.C. § 450f(d) .................................................................... 12

25 U.S.C. § 5321(d) ................................................................... 12

28 U.S.C. § 517 ........................................................................... 1

28 U.S.C. § 1346 ......................................................................... 3

28 U.S.C. § 1346(b) ............................................................... 11, 20

28 U.S.C. § 1446(d) ................................................................... 27

28 U.S.C. § 2675 ....................................................................... 11

28 U.S.C. § 2678 ......................................................................... 4

28 U.S.C. § 2679(b) .................................................................. 5, 9

28 U.S.C. § 2679(b)-(e) ............................................................ 5, 8

28 U.S.C. § 2679(d) ................................................................ 5, 10

28 U.S.C. § 2679(d)(1) ............................................................... 25

28 U.S.C. § 2679(d)(3) ................................................... 25, 26, 27

28 U.S.C. § 2680 ......................................................................... 6

28 U.S.C. § 2680(h) ......................................... 6, 8, 9, 11, 20, 21

28 U.S.C. § 2680(j) ..................................................................... 6

# TABLE OF AUTHORITIES, Cont'd

PAGE(s)

38 U.S.C. § 4116 ................................................................................................... 7

38 U.S.C. § 7316 ................................................................................................... 7

38 U.S.C. § 7316(a)-(d) ......................................................................................... 8

42 U.S.C. § 233 ..................................................... 7, 12, 13, 15, 18, 26, 27, 28

42 U.S.C. § 233(a) ..................................................................... 2, 3, 21, 22

42 U.S.C. § 233(a)-(d) ........................................................................................... 8

42 U.S.C. § 233(c) ......................................................... 8, 11, 21, 26, 28

42 U.S.C. § 233(e) ........................................................................ 9, 11, 21

42 U.S.C. § 233(g)(1) .................................................................... 13, 20

42 U.S.C. § 233(g)(1)(A) ..................................................................... 18

42 U.S.C. § 233(g)(1)(B) ............................................................ 15, 18, 19

42 U.S.C. § 233(g)(1)(D) ..................................................................... 15

42 U.S.C. § 233(g)(1)(G) ..................................................................... 19

42 U.S.C. § 233(g)-(k) ......................................................................... 13

42 U.S.C. § 233(g)-(n) ......................................................................... 15

42 U.S.C. § 233(*l*) ...................................................................... 26, 27

42 U.S.C. § 233(*l*)(1) ............................................................ 17, 28, 29

42 U.S.C. § 233(*l*)(2) ............................................................ 3, 17, 22, 28

42 U.S.C. § 2458a ............................................................................... 7

42 U.S.C. § 247b(k) ........................................................................... 12

# TABLE OF AUTHORITIES, Cont'd

**PAGE(s)**

42 U.S.C. § 254b ................................................................................................ 11

51 U.S.C. § 20137 ................................................................................................ 7

51 U.S.C. § 20137(a)-(d) ...................................................................................... 8

## RULES

Fed. R. Civ. P. 14 .............................................................................................. 24

## REGULATIONS

42 C.F.R. § 6.6(d) ............................................................................................... 16

42 C.F.R. § 6.6(e) ............................................................................................... 16

## FEDERAL REGISTER

59 Fed. Reg. 42,790 ........................................................................................... 16

59 Fed. Reg. 42,791 ........................................................................................... 16

60 Fed. Reg. 22530 ............................................................................................ 16

60 Fed. Reg. 22,532 ........................................................................................... 16

Pursuant to 28 U.S.C. § 517, the United States respectfully submits this Statement of Interest to attend to its interests in connection with this action. Although the United States is not a party to this action, it has an interest in the proceedings because the issues involve interpretation and construction of statutes that govern tort claims, both against actual or deemed Public Health Service employees and against the United States. The United States therefore submits this Statement of Interest to state its position with respect to the proper construction of these statutes.

## STATEMENT OF THE CASE

On March 20, 2015, Michael Jefferson Bryant was convicted of criminal mischief and criminal trespass in the City of Springfield Municipal Court, State of Oregon. The court placed Bryant on probation for two years. As a condition of his probation, the court ordered Bryant to obtain treatment at the Lane County Mental Health facility, subjecting him to incarceration if he failed to comply. *See* Am. Compl., ECF 1, pp. 43-44, at ¶¶ 10-12. Bryant specifically was ordered to "follow all directives from [Lane County Mental Health]."

Pursuant to the court's order, Lane County Mental Health created a treatment plan for Bryant that satisfied the requirements of the County's Jail Diversion Program. *See id.* at p. 44, ¶ 13. Over the next several months, Bryant allegedly failed to comply with his treatment plan, thereby violating the terms of his probation. *See id.* at pp. 45-53, ¶¶ 15-33, 35, 37-39, 41-44. Plaintiffs allege that Defendants did not notify the court of Bryant's probation violations. *Id.*

On or about November 15, 2015, while in violation of the terms of his probation, Bryant attacked his parents at their family home, killing his father and seriously injuring his mother. *See id.* at p. 54, ¶ 49. Thereafter, Bryant set fire to the family home and drove away in the family's vehicle. *Id.* at pp. 54-55, ¶¶ 49-50. After leaving the family home, and while operating the same family vehicle, Bryant struck and killed a pedestrian, Richard Bates. *Id.* at p. 55, ¶ 50. Bryant later struck two more pedestrians with the vehicle, killing one (Marc Sanford) and seriously injuring the other (Lorre Sanford). *Id.* ¶ 51.

On November 13, 2017, Lorre Sanford, and the personal representatives of Richard Bates and Marc Sanford (hereinafter collectively "Plaintiffs"), filed suit in the Lane County Circuit Court against Lane County, the County's mental health facility, and four individual County employees (hereinafter collectively "Defendants"), alleging they negligently administered the County's Jail Diversion Program.[1] Plaintiffs thereafter filed a First Amended Complaint on November 22, 2017. Plaintiffs' amended complaint contends that had Defendants notified the court of Mr. Bryant's probation violations—specifically, his failure to follow Defendants' directives—Bryant would have been detained and unable to injure Ms. Sanford or to kill Mr. Bates and Mr. Sanford.

Defendants filed an answer to the amended complaint on January 10, 2018, admitting many of Plaintiffs' allegations while denying others, and asserting affirmative defenses. Among the affirmative defenses interposed by Defendants in their Answer was that they were each entitled to absolute immunity provided under 42 U.S.C. § 233(a)

---

[1] Neither Mr. Bryant's mother nor his father's Estate are parties to the action.

because all of the mental health services they provided to Bryant arose out of the performance of medical, surgical, dental or related functions within the scope of their employment as defined in 28 USC § 1346, and as such allowed the Secretary of Health and Human Services (HHS) to deem them to be Public Health Service personnel for purposes of the immunity that 42 U.S.C. § 233(a) affords. *See* Answer, ECF 1, p. 88, at ¶¶ 79-80.

Defendants then filed a Notice of Removal to this Court on January 29, 2018, pursuant to 42 U.S.C. § 233(*l*)(2). On February 28, 2018, Plaintiffs filed a motion to remand the action back to state court, arguing that Defendants' removal and assertion of immunity was improper. Defendants opposed remand, asserting that they were immune under 42 U.S.C. § 233(a) and entitled to a hearing under 42 U.S.C. § 233(*l*)(2) to establish their immunity and obtain substitution of the United States as the party defendant. On April 25, 2018, this Court denied Plaintiffs' motion for remand, finding that Defendants were entitled to a hearing under 42 U.S.C. § 233(*l*)(2). ECF 21. Defendants' claim to immunity was not decided. The Court ordered the parties to "confer with the United States and discuss potential discovery and evidentiary issues regarding the pending § 233(*l*)(2) hearing and propose a briefing schedule to the Court." *Id.*

On July 12, 2018, the parties (Plaintiffs and Defendants) participated in a status conference. On July 20, 2018, Plaintiffs sought leave to amend their complaint by excising or modifying three allegations for which Plaintiffs conceded they had no evidentiary support. ECF 29. Defendants opposed, urging, among other things, that 42 U.S.C. § 233(*l*)(2) compelled a stay of all proceedings, precluding any amendment of the complaint until the "hearing" contemplated by § 233(*l*)(2) took place.

On September 11, 2018, this Court denied Plaintiffs' motion to amend their complaint. ECF 32. The Court ordered the parties to confer with the United States and to propose a briefing schedule regarding the § 233(*l*)(2) hearing. On November 27, 2018, this Court ordered the United States to file its statement of interest by December 27, 2018. On December 28, 2018, the Court extended the deadline for filing the statement of interest to 10 days after Congress restored appropriations to the Department of Justice.

## STATUTORY BACKGROUND

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813 (1976).

"Originally, the FTCA afforded tort victims a remedy against the United States, but did not preclude lawsuits against individual tortfeasors." *Levin v. United States,* 568 U.S. 503, 507 (2013). As the Supreme Court explained in *Levin*:

> Judgment against the United States would bar a subsequent action against the federal employee whose conduct gave rise to the claim, 28 U.S.C. § 2678, but plaintiffs were not obliged to proceed exclusively against the Government. They could sue as sole or joint defendants federal employees alleged to have acted tortiously in the course of performing their official duties.

*Ibid.*

Eventually Congress enacted "a series of immunity statutes . . . designed to protect certain classes of Government employees from the threat of personal liability." *United States v. Smith,* 499 U.S. 160, 170 (1991). These statutes – as well as the Federally Supported Health Centers Assistance Act (FSHCAA), which confers similar protection from

liability for medical malpractice on federal grantees operating certain federally-funded health centers and the personnel of such centers – are briefly summarized below.

## 1. 1961 – Federal Drivers Act

The first Government-employee immunity statute was enacted in 1961, and was commonly referred to as the Drivers Act. *See* Pub. Law No. 87-258, § 1, 75 Stat. 539 (Sept. 21, 1961), *previously codified as amended at* 28 U.S.C. § 2679(b)-(e) (1982 ed.), *repealed in part by* Pub. Law No. 100-694, §§ 5-6, 102 Stat. 4564 (Nov. 18, 1988). The Drivers Act protected federal employees from personal tort liability for personal injury, death, and property damage resulting from their operation of motor vehicles within the scope of their employment.[2] The statute afforded them this protection by making the remedy by suit against the United States under the FTCA exclusive of any other action against a federal employee for such harm. *See* 28 U.S.C. § 2679(b) (1982 ed.).

In the event that an action for harm resulting from a federal employee's operation of a vehicle was commenced against the employee in a State court, the statute authorized the Attorney General to remove the case to federal court after issuing a certification that the defendant driver was acting within the scope of his employment at the time of the incident out of which the suit arose, whereupon the action would be deemed to be one against the United States under the FTCA. *See* 28 U.S.C. § 2679(d) (1982 ed.). The statute further provided, however, that if, after a hearing, the district court determined that the suit was

---

[2] It was the frequency of damages suits against federal drivers in particular, *see. e.g., Government Emp. Ins. Co. v. Ziarno,* 273 F.2d 645, 648-49 (2d Cir. 1960); *Bland v. Britt,* 271 F.2d 193, 193-94 (4th Cir. 1959), that impelled Congress to enact the Drivers Act.

one in which a remedy against the United States "is not available," the court was required to remand the case back to the State court from which it had been removed. *Ibid.*

The Drivers Act did not explicitly address whether it applied in cases in which a remedy against the United States was unavailable because one of the FTCA's express exceptions, *codified in* 28 U.S.C. § 2680, was applicable. The legislative history, however, indicates that the Drivers Act's drafters thought the measure would not apply in such cases,[3] and several courts later so construed the statute.[4]

---

[3] A draft of the Drivers Act bill, which was in the form of an amendment to the FTCA, was submitted to Congress by the General Services Administration (GSA). *See* S. Rep. No. 736, 87th Cong., 1st Sess. 6-11 (1961) (GSA transmittal letter and draft bill), *reprinted in* 1961 U.S. Code Cong. & Admin. News 2784. Referring to one of the FTCA's express exceptions (*i.e.,* 28 U.S.C. § 2680(j)), GSA's letter transmitting the draft bill specifically advised Congress:

> [U]nder the exceptions to the coverage of the Federal Tort Claims Act set forth in title 28, United States Code, section 2680 there would be excluded from the operation of the proposed amendment any claims arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

*Id.* at 10.

[4] *See, e.g., Willson v. Cagle,* 694 F. Supp. 713, 717 (N.D. Cal. 1988) (Drivers Act did not shield federal employee from liability for deliberately injuring protester by running train over him because 28 U.S.C. § 2680(h) made remedy against United States unavailable with respect to claims arising out of assault and battery); *Smith v. DiCara,* 329 F. Supp. 439, 442 (E.D. N.Y. 1971) (Drivers Act would be inapplicable if federal driver intentionally injured plaintiff because in such a case 28 U.S.C. § 2680(h) would disqualify plaintiff as a claimant under 28 U.S.C. § 1346(b)); *Adams v. Jackel,* 220 F. Supp. 764, 766 (E.D. N.Y. 1963) (in order to be a case in which a remedy is "available" against the United States, the defendant federal driver must in fact have been acting within scope of employment and exceptions of 28 U.S.C. § 2680 must be inapplicable).

## 2. **1965-1976 – Agency-Specific Malpractice Immunity Statutes**

Between 1965 and 1976, Congress enacted several additional stand-alone immunity statutes, each of which was designed to protect personnel of specifically designated Federal agencies (including the Public Health Service) from the threat of liability for medical malpractice. *See Carlson v. Green,* 446 U.S. 14, 20 (1980) (citing statutes that explicitly made FTCA remedy exclusive for "malpractice by certain Government health personnel"); Pub. Law No. 89-311, § 6, 79 Stat. 1156 (Oct. 31, 1965), *previously codified at* 38 U.S.C. § 4116 (1970 ed.), *now codified as amended at* 38 U.S.C. § 7316 (Veterans Administration personnel); Pub. Law No. 91-623, § 4, 84 Stat. 1870 (Dec. 31, 1970) (adding new § 223, subsequently renumbered § 224, to Public Health Service Act of July 1, 1944, ch. 373, 58 Stat. 682), *codified as amended at* 42 U.S.C. § 233 (Public Health Service personnel); Pub. Law No. 94-350, § 119, 90 Stat. 827 (July 12, 1976), *previously codified at* 22 U.S.C. § 817 (1982 ed.), *now codified at* 22 U.S.C. § 2702 (Department of State personnel); Pub. Law No. 94-864, § 1, 90 Stat. 1985 (Oct. 8, 1976), *codified as amended at* 10 U.S.C. § 1089 (Armed Forces, Department of Defense, and Central Intelligence Agency personnel); Pub. Law No. 94-864, § 3, 90 Stat. 1988 (Oct. 8, 1976), *previously codified at* 42 U.S.C. § 2458a (1982 ed.), *now codified at* 51 U.S.C. § 20137 (National Aeronautics and Space Administration personnel).[5]

---

[5] These agency-specific statutes were enacted in response to the growing number of malpractice suits that were being filed against federal medical personnel (*see, e.g., Bates v. Carlow,* 430 F.2d 1331 (10th Cir. 1970); *Blitz v. Boog,* 328 F.2d 596 (2d Cir. 1964); *Brenner v. Kelly,* 201 F. Supp. 871 (D. Minn. 1962); *Vendetti v. Schuster,* 242 F. Supp. 746 (W.D. Pa. 1965)), as well as decisions holding that such personnel were not protected from liability for medical malpractice by the federal common-law doctrine of official immunity

All these agency-specific statutes were patterned after the Drivers Act. *See Levin v. United States,* 568 U.S. at 507 n.2; *compare* 28 U.S.C. § 2679(b)-(e) (1982 ed.), *with* Public Health Service Act § 224(a)-(d), *codified at* 42 U.S.C. § 233(a)-(d); 10 U.S.C. § 1089(a)-(d); 22 U.S.C. § 2702(a)-(d); 38 U.S.C. 7316(a)-(d); 51 U.S.C. § 20137(a)-(d). But they also differed from the Federal Drivers Act in certain respects, one in particular being noteworthy in the context of the instant case.

Each of the agency-specific malpractice statutes contains a provision designed to address the problem of so-called "medical batteries." As explained by the Supreme Court in *Levin,* "medical malpractice claims may be based in negligence, in which case the FTCA's waiver of the Government's sovereign immunity is not in doubt." 568 U.S. at 512-13. But such claims also "may be based on alleged lack of consent, therefore qualifying as batteries." *Id.* at 513.

Absent some statutory modification, one of the FTCA's express exceptions, 28 U.S.C. § 2680(h) (excluding claims arising out of assault and battery), would have made the remedy against the United States unavailable in cases involving such medical batteries, thereby triggering a subsection that is contained in each of the relevant statutes – *see, e.g.*, Public Health Service Act § 224(c), *codified at* 42 U.S.C. § 233(c) – that requires a removed case to be remanded to the State court when no remedy against the United States is available. This would have left the medical personnel who otherwise would have been

---

(*see United States v. Smith,* 499 U.S. at 170 n.11 (discussing *Henderson v. Bluemink,* 511 F.2d 735, 737 (D.C. Cir. 1977)); *see also Jackson v. Kelly,* 557 F.2d 735, 737 (10th Cir. 1977), *overruling Bates v. Carlow, supra*).

immunized by the statute unprotected in cases involving medical batteries. *See Lojuk v. Quandt,* 706 F.2d 1456, 1463-64 (7th Cir. 1983).

To avert this eventuality, Congress eventually incorporated into each of the agency-specific malpractice statutes a subsection (the precise wording of which varies slightly from statute to statute) making the provisions of 28 U.S.C. § 2680(h) inapplicable to claims for assault and battery that are otherwise covered by the immunity statute. *See, e.g.,* Public Health Service Act § 224(e), *codified at* 42 U.S.C. § 233(e).

### 3. **1988 – The Westfall Act**

In the wake of the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292 (1988), Congress enacted the Liability Reform Act of 1988, commonly referred to as the Westfall Act. *See* Pub. Law No. 100-694, 102 Stat. 4563 (Nov. 18, 1988). The Westfall Act replaced two key provisions of the Drivers Act, effecting major changes not only in the scope of the statutory immunity that is conferred by the first of these provisions (*i.e.,* 28 U.S.C. § 2679(b)), but also in how this immunity is to be invoked under the second (*i.e.,* 28 U.S.C. § 2679(d)). *See id.* §§ 5 & 6, 102 Stat. 4564-65.

The Westfall Act amended subsection (b) of § 2679 by subdividing it into two new numbered paragraphs. Under the Drivers Act, this subsection had protected federal employees from liability only for harm resulting from their operation of motor vehicles within the scope of their employment. As amended by the Westfall Act, new paragraph (1) of § 2679(b) now protects federal employees from liability for harm resulting from any and all activities they perform within the scope of their employment. New paragraph (2) of § 2679(b) goes on to except from the immunity that is conferred by paragraph (1) two

specific categories of claims, namely, those for violating the Constitution of the United States, and those for violating statutes of the United States.

Turning to 28 U.S.C. § 2679(d), the Westfall Act amended this subsection by subdividing it into five new numbered paragraphs. Each of these new paragraphs effected changes that may be summarized as follows:

- While the Drivers Act had provided a certification procedure only for cases commenced in State courts, paragraph (1) of amended § 2679(d) now authorizes the Attorney General to issue scope-of-employment certifications in actions instituted against federal employees in United States district courts.

- Paragraph (2) corresponds to § 2679(d) as it originally was enacted by the Drivers Act in that it authorizes the Attorney General to issue scope certifications in actions commenced against federal employees in State courts, but it now makes the issuance of such a certification conclusive for purposes of removal; paragraph (2) goes on to eliminate the sentence previously contained in § 2679(d) that had required that removed cases be remanded to the State court if, after a hearing, the district court determined that the case was one in which no remedy was available against the United States.

- Paragraph (3) of amended § 2679(d) now confers on the defendant employee the right to challenge a refusal of the Attorney General to issue a scope certification by filing a petition requesting the court in which the action is pending to find and certify that the employee was acting within the scope of his employment; paragraph (3) further provides that if the court so certifies, the United States shall be substituted as the party defendant, that the Attorney General (but not the employee) may remove the case if such a petition is filed in an action pending in a State court, and that if, in an action that has been so removed by the Attorney General, the district court determines that the employee was not acting within the scope of his employment at the time of the incident out of which the action arose, the case must be remanded to the State court.

- Paragraph (4) of amended § 2679(d) now provides that if a scope certification is issued under paragraphs (1), (2), or (3), the action shall proceed

as would any action against the United States 28 U.S.C. § 1346(b), and shall be subject all limitations and exceptions applicable in such actions.

- Finally, paragraph (5) of amended § 2679(d) now provides that if an action in which the United States has been substituted under § 2679(d) is dismissed because the plaintiff failed first to present the claim to the appropriate Federal agency pursuant to 28 U.S.C. § 2675, the claim will be treated as timely if it would have been timely had it been filed on the date the underlying action was commenced, and it is presented to the agency within 60 days of the dismissal of the action.

Importantly, however, the Westfall Act left untouched the provisions of the stand-alone immunity statutes enacted between 1965 and 1976 to protect the personnel of specifically designated federal agencies (including the Public Health Service) from liability for medical malpractice. As noted above, these agency-specific statutes all were patterned after the Drivers Act. Thus, all the provisions of these statutes, including those which replicate the provisions of the Drivers Act that the Westfall Act now has superseded, remain in effect. *See, e.g.,* Public Health Service Act § 224(c), *codified at* 42 U.S.C. 233(c) (requiring, *inter alia,* that an action removed from State court be remanded if district court determines that no remedy is available against United States). Equally important, the provisions in these statutes that had no counterpart in the Drivers Act (*see, e.g.,* Public Health Service Act § 224(e), *codified at* 42 U.S.C. § 233(e) (making provisions of 28 U.S.C. § 2680(h) inapplicable to claims for assault or battery arising out of performance of medical, dental, surgical, or related functions)) also remain in effect.

### 4. **1992-1995 – Federally Supported Health Centers Assistance Act**

Under sections 329, 330, 340, and 340A of the Public Health Service Act, *later consolidated and codified at* 42 U.S.C. § 254b, the Secretary of HHS was (and under 42

U.S.C. § 254b continues to be) authorized to make grants of federal funds to public and non-profit private entities for the operation certain health centers that provide services to various medically underserved populations. One of the costs of operating these health centers was the cost that the centers incurred to purchase liability insurance to protect themselves and their personnel from claims for medical malpractice. The purchase of such insurance was a necessary expense because neither the centers nor their personnel were covered by any of the Government-employee immunity statutes summarized above.

Congress previously had made the remedy against the United States under the FTCA exclusive as to various other non-federal entities and actors with respect to certain narrowly-circumscribed categories of claims. *See, e.g.,* Pub. Law No. 94-380, § 2, 90 Stat. 1114 (Aug. 12, 1976), *formerly codified at* 42 U.S.C. § 247b(k) (1976 ed.) (making remedy against United States under FTCA exclusive of any action or proceeding against a participant in National Swine Flu Immunization Program for personal injury and death arising out of administration of swine flu vaccine as part of program); Pub. Law No. 100-202, § 201, 101 Stat. 1329-246 (Dec. 22, 1987), *formerly codified as amended at* 25 U.S.C. § 450f(d) (2006 ed.), *currently codified as amended at* 25 U.S.C. § 5321(d) (deeming Indian tribes, tribal organizations, Indian contractors, and employees and personal services contractors of such entities to be employees of Public Health Service for purpose of 42 U.S.C. § 233 with respect to claims for personal injury and death resulting from performance of medical, surgical, dental, and related functions in carrying out certain contracts, grant agreements, or cooperative agreements with Indian Health Service).

Invoking the latter statute as precedent, in 1992 Congress decided to confer similar protection on health centers and certain personnel of centers receiving grants under Sections 329, 330, 340, and 340A of the Public Health Service Act, provided that the Secretary (in consultation with the Attorney General) determined that the center in question met certain statutory qualifications relating to, *inter alia,* the implementation of appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions of the center.  *See* Federally Supported Health Centers Assistance Act of 1992, Pub. Law No. 102-501, §§ 2-4, 6, 106 Stat. 3268 (Oct. 24, 1992), *formerly codified at* 42 U.S.C. § 233(g)-(k) (1994 ed.).

Once the Secretary (in consultation with the Attorney General) determined that the center in question met the statutory criteria, the center and its personnel were deemed to be employees of the Public Health Service for purposes of Section 224 of the Public Health Service Act (42 U.S.C. § 233), which is the agency-specific immunity statute that protects commissioned officers and employees of the Public Health Service from liability resulting from the performance of medical, surgical, dental, and related functions in the performance of their duties.  *See* Pub. Law No. 102-501, § 2, 106 Stat. 3268, *formerly codified at* 42 U.S.C. § 233(g)(1) (1994 ed.) ("*For purposes of this section,* an entity described in paragraph (4) and any officer, employee, or contractor (subject to paragraph (5)) of such an entity who is a physician or other certified health care practitioner shall be deemed to be and employee of the Public Health Service . . . .") (italics added).

Proponents of the 1992 legislation, which applied to acts or omissions occurring during a three-year demonstration period (that began on January 1, 1993, and was scheduled to end on January 1, 1996), hoped that once the centers and their personnel were shielded from potential liability for medical malpractice, the centers no longer would find it necessary to use their federal grant money to purchase liability insurance to protect themselves and their personnel from claims for medical malpractice, and that the resulting savings then could be used to provide increased care to the medically underserved populations served by the centers.[6] Unfortunately, the 1992 legislation did not preclude deemed health centers from using their federal grant money to continue purchasing medical malpractice liability insurance, and many continued to maintain their insurance coverage because of uncertainty concerning the extent of the protection afforded by the statute.[7]

In 1995, Congress permanently extended and clarified the malpractice protection made available to health centers receiving federal grants under one of the four specified

---

[6] *See* 138 Cong. Rec. 32,335 (Oct. 5, 1992) (Rep. Franks) ("[The bill] essentially allows neighborhood health centers to use part of their appropriation at no additional cost to be covered under the Federal [Tort] Claims Act, obviating the need for them to spend millions of dollars a year on private malpractice insurance."); *see also id.* at 34,269 (Oct. 8 1992) (Senator Kennedy) ("This measure enables community health centers to obtain malpractice insurance under the Federal Tort Claims Act, freeing up at least $30 million during the first year to expand critically needed services."); *id.* at 34,270 (Senator Hatch) ("This legislation will reduce the malpractice insurance premium costs of these facilities and their doctors. Consequently, funds will be made more available for services to people instead of being tied up in malpractice premiums.").

[7] *See* H.R. Rep. No. 104-398 p. 6 (1995) ("The lengthy period of uncertainty regarding the law's scope made it necessary for many health centers to continue their private malpractice coverage. To date, 542 health centers have been 'deemed' by HHS as eligible for malpractice coverage under the FTCA, and 119 health centers have dropped private malpractice coverage for one or more of their clinicians.").

sections of the Public Health Service Act and to the personnel of such centers. *See* Federally Supported Health Centers Assistance Act of 1995 (FSHCAA), Pub. Law No. 104-73, §§ 2-11, *codified as amended at* 42 U.S.C. § 233(g)-(n).

Under the 1995 legislation, FTCA coverage is now optional for federally funded health centers and their personnel. As amended in 1995, the statute authorizes the Secretary of HHS to deem a health center and its personnel to be employees of the Public Health Service for purposes of 42 U.S.C. § 233 only if the center applies for such coverage. *See* 42 U.S.C. § 233(g)(1)(D). A health center may elect either not to apply for, or to terminate, FTCA coverage. *See id.* § 233(g)(1)(G) & (H). If a center opts out of FTCA coverage, it may use its federal grant money to purchase liability insurance to protect itself and its personnel from claims for medical malpractice that otherwise would have been covered by the FTCA. *See id.* § 233(g)(1)(G)(ii) & (H)(iii).

In addition, to clarify the extent of malpractice protection that is afforded to deemed centers and their personnel, the 1995 legislation more clearly delineated the services to which the deeming of a center and its personnel would apply. As amended in 1995, the statute now specifies that the deeming of a health center and its personnel to be employees of the Public Health Service for purposes of Section 224 of the Public Health Service Act (42 U.S.C. § 233) applies with respect to services provided to all the health center's patients, as well as to services provided to certain other individuals who are not the center's patients. *See* 42 U.S.C. § 233(g)(1)(B). The latter category encompasses individuals to whom treatment is rendered by the center's personnel in certain statutorily circumscribed circumstances, even though the individual receiving the treatment is not a registered patient

of the center.  *See id.* § 233(g)(1)(C); 60 Fed. Reg. 22530, 22,532 (May 8, 1995), *codified at* 42 C.F.R. § 6.6(d) & (e).[8]

---

[8] Section 233(g)(1)(C) of title 42, United States Code, codified the provisions of the final regulation promulgated on May 8, 1995, in which the Department of Health and Human Services "describe[d] the circumstances under which health center practitioners are covered for services to individuals who are not registered patients of the health center." H.R. Rep. No. 104-398 at p. 7.  As explained when § 6.6(d) of this regulation was published as a proposed rule:

> The Department is aware that there has been some confusion since the enactment of section 224(g) about the types of activities that would be covered.  In particular, there have been questions about when coverage is available where individuals who are not registered patients of the grantee are treated.  This paragraph provides clear standards for answering these questions.  Coverage will be available for the treatment of non-patients of the covered entities only where the Secretary determines either that (1) the provision of the services to such individuals benefits the patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by the entity, or (2) the provision of services to such individuals facilitates the provision of services to patients of the entity, or (3) such services are otherwise required to be provided to such individuals under an employment contract, or similar arrangement between the entity and the covered individual.

59 Fed. Reg. 42,790, 42,791 (Aug. 19, 1994).  The final regulation also added a new paragraph (e), which lists examples of the settings in which services provided to individuals other than registered patients of the center will be covered by the FTCA.  These examples include such community-wide interventions as school-based and school-linked clinics, health fairs, immunization campaigns, and migrant camp and homeless outreaches; certain hospital-related activities, such as providing periodic hospital call or hospital emergency room coverage, as required by a hospital as a condition for center's personnel obtaining hospital admitting privileges; and certain other coverage-related activities, such as a requirement as part of a center's arrangement with local community providers to provide after-hours coverage for the center's patients that the center's personnel provide periodic or occasional cross-coverage for the patients of these providers.  *See* 60 Fed. Reg. at 22,532, *codified at* 42 C.F.R. § 6.6(e).

Finally, the 1995 legislation also prescribed a 15-day period for the Attorney General to appear after being notified of the filing of a State-court suit against a federally-funded center or an employee, officer, governing board member, or contractor of such a center, and advise the State court as to whether the Secretary has determined that the defendant is deemed to be an employee of the Public Health Service with respect to the acts or omissions as issue in the case. *See* 42 U.S.C. § 233(*l*)(1). If the Attorney General fails to appear in the State court within this prescribed 15-day period, the statute authorizes the defendant center or center personnel to remove the action to the appropriate United States district court, where the proceedings shall be stayed until the court conducts a hearing and makes a determination as to the appropriate forum or procedure for the assertion of the claim at issue. *See id.* § 233(*l*)(2).[9]

---

[9] The 1995 House Report indicates that these provisions were designed to protect health centers and their personnel from the entry of default judgments by State courts due to delays in the appearance of the Attorney General in cases pending in State courts:

> The Committee is concerned about the length of time that it has taken for malpractice claims to be processed. When a claim is filed against a health center, the Department of Justice (DOJ) requests the health center's application for FTCA coverage from HHS and often has requested additional supporting documentation from the health center concerning items described in the application. The examination of this documentation after a claim is filed, rather than when the application for coverage is approved, has resulted in delays in the appearance by DOJ in State or local court. This has resulted in at least one default judgment against a health center involving a claim that was later determined to be covered under the FTCA.

H.R. Rep. No. 104-398 at p. 7; *see also id.* at p. 12 (noting that if the Attorney General did not promptly appear in the State court, "a default judgment against the defendant health center or individual could be filed").

In conclusion, two textual features of the FSHCAA are especially noteworthy in the context of the present case.

- First, federally funded health centers and their personnel may be deemed to be employees of the Public Health Service under the FSHCAA, but such deeming is only for purposes of section 224 of the Public Health Service Act (42 U.S.C. § 233). As noted, section 224 is the agency-specific immunity statute that protects commissioned officers and employees of the Public Health Service from liability resulting from their performance of medical, surgical, dental, or related functions. *See* 42 U.S.C. § 233(g)(1)(A). Federally funded health centers and their personnel are not deemed to be employees of the Public Health Service for purposes of the Westfall Act.

- Second, the deeming of a federally funded health center and its personnel to be employees of the Public Health Service applies only with respect to the provision of services by the center's personnel to the health center's patients, and to certain other individuals who are not registered patients of the center (*i.e.,* patients of other providers or facilities) to whom services (*i.e.,* treatment) are provided in certain statutorily prescribed settings. *See* 42 U.S.C. § 233(g)(1)(B) & (C). The center and its personnel are not deemed to be employees of the Public Health Service with respect to the provision of services to any other persons or entities, including courts and other governmental entities.

## POSITION OF THE UNITED STATES

## I. THE ATTORNEY GENERAL DECLINES TO INTERVENE IN THIS CASE AND TO SEEK THE SUBSTITUTION OF THE UNITED STATES AS THE PARTY-DEFENDANT FOR TWO REASONS.

### A. Notifying the Springfield Municipal Court that Michael Bryant Was in Violation of the Terms of His Probation Was Not the Provision of a Service as to Which Defendants Were Deemed to be Public Health Service Employees for Purposes of Section 224 of the Public Health Service Act.

The deeming of Defendants to be Public Health Service employees for purposes of 42 U.S.C. § 233 applied only with respect to the provision of services rendered to patients of the federally-funded community health centers operated by Lane County, and to certain

other individuals to whom treatment is rendered by the deemed health center personnel in various statutorily circumscribed settings. *See* 42 U.S.C. § 233(g)(1)(B) & (C).

The gist of Plaintiffs' claims in this action is that Defendants failed to notify the Springfield Municipal Court that Michael Bryant had violated the terms of the probation imposed on Bryant by the court. Notifying a sentencing court that an offender is in violation of the terms of his probation is not the provision of a service either to the offender or to any other individual to whom treatment is being rendered. Thus, Defendants were not deemed to be PHS employees for purposes of carrying out this notification function, and the FSHCAA therefore affords them no protection from Plaintiffs' claims in this action.


In addition, numerous other provisions of the statute reflect that the FSHCAA protects federally funded health centers and their personnel from liability only for medical malpractice. FTCA coverage of centers and their personnel under the FSHCAA was designed to replace the private medical malpractice liability insurance the centers previously were required to purchase, and only centers that opt out of FTCA coverage may use their federal grant money to purchase such insurance. *See* 42 U.S.C. § 233(g)(1)(G) & (H). Further, one of the statutory criteria that a center must meet before FTCA coverage can be extended to it and its personnel is that it have in place appropriate policies and procedures to reduce the risk of malpractice. *See id.* § 233(h)(1).

Conversely, in making annual estimates of the amount of claims that are expected to arise from acts or omissions of deemed entities for which payment is expected to be made each fiscal year, *see id.* § 233(k), the Secretary of HHS is prohibited from considering

centers which have opted out of FTCA coverage (and are thus entitled to use their federal grant money to purchase malpractice insurance).  *See id.* § 233(g)(1) (G)(i)-(ii) & (H)(iii).

Lastly, in order to generate additional data concerning whether extension of FTCA coverage to health centers and their personnel was cost effective, the FSHCCA directed the Comptroller General of the United States to submit a report to Congress which, *inter alia*, compared "the costs and benefits to taxpayers of maintaining medical malpractice liability coverage for [health centers] pursuant to [Section 224]," to "an estimate of the aggregate amounts [such centers] would have directly or indirectly paid in premiums to obtain medical malpractice coverage if [Section 224] would not have been in effect."  *See id.* § 233(n)(1)(D)(i) & (2)(A)(i).

All these provisions serve to buttress the conclusion that the FSHCAA confers no protection on Defendants from Plaintiffs' claims in this case, which seek damages for personal injuries and deaths of persons who were not patients of the health center operated by Lane County and were not recipients of treatment rendered by the personnel of that center, do not sound in medical malpractice.

**B.  Section 224 of the Public Health Service Act Confers No Protection on Defendants Because Plaintiffs' Claims Arise Out of Misrepresentation and Therefore This Case is One in Which No Remedy Against the United States is Available.**

Additionally, the FSHCAA is inapplicable in this case because, by its express terms, 28 U.S.C. § 2680(h) makes the provisions of 28 U.S.C. § 1346(b) inapplicable to "[a]ny claim arising out of . . . misrepresentation."  Plaintiffs' claims against Defendants in this

case are based on Defendants' failure to communicate information to the Springfield Municipal Court concerning Michael Bryant's violation of the terms of his probation. A claim that is predicated on a failure to communicate information is one that "aris[es] out of . . . misrepresentation" within the meaning of § 2680(h). *See Lawrence v. United States,* 340 F.3d 952, 958 (9th Cir. 2003) (claim that federal agents failed to communicate complete information concerning background of participant in federal witness protection program who later sexually assaulted minor plaintiff was barred by § 2680(h)'s misrepresentation exception). Thus, this case is one in which no remedy is available against the United States under section 224(a) of the Public Health Service Act, 42 U.S.C. § 233(a).

Consequently, even if the Attorney General had purported to exercise the authority conferred on him by section 224(c) of the Public Health Service Act to remove the instant case from the Lane County Circuit Court, this Court still would have been compelled under the express terms of that statute to remand the case back to the State court because, in the words of the last sentence of section 224(c), "the case . . . is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States." 42 U.S.C. § 233(c).

Although section 224(e) of the Public Health Service Act, 42 U.S.C. § 233(e), abrogates 28 U.S.C. § 2680(h) in cases involving alleged medical batteries (*i.e.,* cases in which a patient allegedly undergoes a course of treatment to which he did not consent), *see, e.g., Levin v. United States,* 568 U.S. at 518; *Leab v. Chambersburg Hosp.,* 230 F.R.D. 395, 396-97 (M.D. Pa. 2005), the abrogation of § 2680(h) does not extend to cases such as this one which involves the allegedly negligent failure to prevent a person other than a

government employee from committing an assault or battery. *See Sheridan v. United States,* 487 U.S. 392, 400-01 (1988) (FTCA's assault and battery exception inapplicable in cases involving assaults and batteries committed by persons other than government employees).

Thus, the FTCA's misrepresentation exception remains applicable in this case, and forecloses any remedy against the United States within the meaning of section 224(a) of the Public Service Act, 42 U.S.C. § 233(a). Because this case thus is one in which a remedy by suit against the United States is unavailable within the meaning of 42 U.S.C. § 233(a), any protection that the FSHCAA might otherwise afford Defendants is inapplicable. *See Lojuk v. Quandt,* 706 F.2d at 1463-64; *Smith v. DiCara,* 329 F. Supp. at 442.

## II. DEFENDANTS CANNOT UTILIZE 42 U.S.C. § 233(*l*)(2) AS A VEHICLE TO CHALLENGE THE ATTORNEY GENERAL'S DECISION NOT TO INTERVENE AND REQUEST THAT THE UNITED STATES BE SUBSTITUTED AS THE PARTY-DEFENDANT.

Historically, under the Drivers Act and each of the agency-specific immunity statutes patterned after the Drivers Act, the United States could be substituted for a defendant federal employee only at the instance of the Attorney General (or the Attorney General's designee). How substitution of the United States for the defendant employee was accomplished under these statutes depended on whether the action had been commenced in a State court or in a United States district court, and (if the latter) whether the plaintiff had asserted claims in the district court against the defendant employee alone, or against both the defendant employee and the United States.

The Drivers Act and the agency-specific immunity statutes all incorporated a certi-fication scheme, but this mechanism for substituting the United States applied only in cases brought in State courts. *See, e.g., Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 425 (1995) (discussing Drivers Act); *Hui v. Castaneda,* 559 U.S. 799, 810 & n.9 (2010) (dis-cussing Public Health Service Act); *Gustafson v. Peck,* 216 F. Supp. 370, 373 (N.D. Iowa 1963) (noting that Drivers Act "allow[ed] Government the right to intervene and remove the action to Federal court").

In an action brought solely against a federal employee in a United States district court, the United States simply would intervene in the action and then move to substitute itself for the defendant employee. *See, e.g., United States v. Smith,* 499 U.S. at 162 (action under agency-specific statute conferring immunity on Armed Forces medical personnel); *Levin v. Taylor,* 464 F.2d 770, 771 (D.C. Cir. 1972) (action under Drivers Act).

Finally, in district court actions in which the plaintiff asserted claims against both the United States and the employee, it was unnecessary for the United States to intervene or otherwise bring itself into the action (since it was already a party-defendant). In such actions, a motion to dismiss the claims against the employee would be filed, together with competent proof of the employee's entitlement to the claimed immunity. *See, e.g., Hui v. Castaneda*, 559 U.S. at 811 (immunity under Public Health Service Act § 224(a), 42 U.S.C. § 233(a)); *Perez v. United States,* 218 F. Supp. 571, 572 (S.D.N.Y. 1963) (immunity under Drivers Act).

However, no mechanism existed under either the Drivers Act or the agency-specific immunity statutes to enable a defendant employee to bring the United States into the litigation if the Attorney General refused to intervene and cause the United to be substituted as the party-defendant.[10]

Moreover, the Attorney General could not be compelled in a mandamus action to issue a certification under the Drivers Act certifying that a federal employee who had been sued in State court was operating a motor vehicle within the scope of his employment at the time of the accident out of which the State court action arose. *See Seiden v. United States,* 537 F.2d 867, 869-70 (6th Cir. 1976); *Lemley v. Mitchell,* 304 F. Supp. 1271, 1272 (D. D.C. 1969).

Confronted with the Attorney General's refusal to intervene and cause such an action to be removed, and the United States to be substituted as the party-defendant, the defendant government employees had two options. The employee could attempt to establish his entitlement to immunity in the State court in which he had been sued, and if he was

---

[10] Counsel for the United States is aware of two cases in which a single district judge sitting in the Eastern District of Tennessee permitted defendant federal drivers to implead the United States as a third-party defendant after the Attorney General's designee refused to intervene in suits which had been brought against the federal drivers in the district court. *See Jones v. Polishuk,* 252 F. Supp. 752, 753-54 (E.D. Tenn. 1965); *Prince v. Creel,* 358 F. Supp. 234, 236 (E.D. Tenn. 1972). In both cases, the court dismissed the plaintiff's claims against the defendant federal driver after finding that the defendant driver's operation of the motor vehicle had been within the scope of his employment, and then allowed the lawsuits to proceed directly against the United States. It is respectfully submitted that allowing Fed. R. Civ. P. 14 to be used to implead the United States in such circumstances was patently improper. *See, e.g., Gartner v. Lombard Bros.,* 197 F.2d 53, 54 (3d Cir. 1952) (Rule 14 cannot be used to change plaintiff's suit against defendant into one against somebody else).

successful the action against him would be dismissed. *See Seiden,* 537 F.2d at 869-70;

*Lemley*, 304 F. Supp. at 1273. Alternatively, the employee could file an action under the

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* to challenge the Attorney General's

decision not to intervene. *See Seiden,* 537 F.2d at 870, *citing Proietti v. Levi,* 530 F.2d 836

(9th Cir. 1976).

That was the state of the law when, in 1988, Congress enacted the Westfall Act.

With the enactment of the Westfall Act, Congress for the first time authorized a defendant

employee to file a petition in the court in which the tort suit was pending to challenge the

Attorney General's refusal to certify that he was acting within the scope of his employment

at the time of the incident out of which the suit arose. *See* 28 U.S.C. § 2679(d)(3). The

same paragraph further authorizes the court in ruling on such a petition to order the substi-

tution of the United States as the party-defendant if the court finds and certifies that a de-

fendant employee was acting within the scope of his employment at the time of the incident

out of which a suit arose. *See ibid.* Finally, this paragraph also authorizes the Attorney

General – but not the defendant employee – to remove the case if the employee files the

petition in an action pending in a State court, and requires the district court to return the

case to the State court if it determines that the employee was not acting within the scope of

his employment. *See ibid.*

The provisions of 28 U.S.C. § 2679(d)(3) clearly are inapplicable in this case. By

its own terms, § 2679(d)(3) applies only when "the Attorney General has refused to certify

scope of office or employment *under this section*" (italics added), *i.e.,* has refused to issue

certifications under 28 U.S.C. § 2679(d)(1) & (2). As noted previously, the FSHCAA

authorizes the Secretary of HHS to deem a federally funded health centers and its personnel to be employees of the Public Health Service solely for purposes of section 224 of the Public Health Service Act, 42 U.S.C. § 233, which is the entirely separate immunity statute that protects Public Health Service personnel from liability resulting from the performance of medical, surgical, dental, and related functions. That statute has its own certification provision (42 U.S.C. § 233(c)), and the Attorney General's refusal to issue a certification under § 233(c) thus is completely outside the ambit of 28 U.S.C. § 2679(d)(3).

The FSHCAA, which was enacted several years after the Westfall Act, itself confers no authority on district courts either to review refusals by the Attorney General to issue certifications under 42 U.S.C. § 233(c), or to order the substitution of the United States as the party-defendant in cases brought against a federally funded health centers or their personnel. Any suggestion that one provision of the FSHCAA in particular, namely, 42 U.S.C. § 233(*l*), authorizes district courts to grant such relief, or that § 233(*l*) was intended to serve functions similar to those served by 28 U.S.C. § 2679(d)(3), is utterly sleeveless.

In stark contrast to 28 U.S.C. § 2679(d)(3), nothing in 42 U.S.C. § 233(*l*) authorizes health centers or their personnel to file a petition in any court to certify that they were acting within the scope of their employment if the Attorney General refuses to exercise his authority to issue a certification under 42 U.S.C. § 233(c). Nor does 42 U.S.C. § 233(*l*) contain anything that can be read to authorize any court itself to find and certify that a health center or its personnel were acting within the scope of their employment if the Attorney General has declined to do so, let alone anything that authorizes any court to order the United States to be substituted as the party-defendant in such circumstances.

Moreover, 42 U.S.C. § 233(*l*) serves completely different – and much more limited – functions than those which are served by 28 U.S.C. § 2679(d)(3). First and foremost, § 233(*l*) is designed to protect against the entry of default judgments in cases brought against health centers or their personnel in State courts. Toward this end, paragraph (1) of § 233(*l*) provides that within 15 days after being notified of the filing of such an action, the Attorney General shall make an appearance in the State court and advise such court as to whether the Secretary has determined under the provisions of the FSHCAA that the defendant center or center personnel are deemed to be employees of the Public Health Service for purposes of section 224 of the Public Health Service Act (42 U.S.C. § 233) with respect to the acts or omissions that are the subject of the civil action or proceeding.

If the Attorney General fails to appear in the State court within this 15-day period, paragraph (2) of § 233(*l*) authorizes the defendant center or center personnel to remove the action to the appropriate United States district court. The filing of a notice of removal with the clerk of the State court itself precludes the State court from proceeding any further unless and until the case is remanded, thereby foreclosing the State court from entering a default judgment against the defendant health center or health center personnel. *See* 28 U.S.C. § 1446(d).

Furthermore, paragraph (2)'s requirement that the district court stay the action after it has been removed affords the Attorney General additional time within which to ascertain and advise the district court whether the defendant center and its personnel have been deemed to be employees of the Public Health Service with respect to the acts or omissions that are the subject of the action.

Finally, the determination by the district court under paragraph (2) concerning the appropriate forum or procedure for the assertion of the claim at issue is informed by the advice the Attorney General ultimately provides to the court.  If the Attorney General determines that the case is one in which the United States must be substituted as the party-defendant, the Attorney General will so advise the Court and the United States then can intervene in the action and seek to have itself substituted for the defendant health center or health center personnel pursuant to section 224 of the Public Health Service Act, 42 U.S.C. § 233.  *See United States v. Smith,* 499 U.S. at 162.  If, on the other hand, the Attorney General advises the district court that it has been determined that the case is one in which the United States will not intervene, the action should be remanded to the State court forthwith.

For all the foregoing reasons, 42 U.S.C. § 233(*l*)(2) cannot be utilized as a vehicle to challenge either a negative deeming determination by the Secretary of HHS, or a refusal by the Attorney General to issue a certification under 42 U.S.C. § 233(c).  *See El Rio Santa Cruz Neigh. Health Ctr. v. U.S. Dept. of Health & Hum. Servs.,* 396 F.3d 1265, 1272 (D.C. Cir. 2005); *K.C. v. Cal. Hosp. Med. Ctr.,* Case No. 2:18-CV-06619-RGK-ASx, 2018 WL 5906057 at *5 (C.D. Cal. Nov. 8, 2018); *Q. v. Cal. Hosp. Med. Ctr.,* Case No. CV-17-7917-R, 2018 WL 1136568 at *2 (C.D. Cal. Mar. 1, 2018).

Clearly, if the Attorney General timely appears in a State court pursuant to 42 U.S.C. § 233(*l*)(1), and advises that court that a defendant health center or defendant health center personnel are not deemed to be employees of the Public Health Service with respect to the actions or omissions that are the subject of the action, the defendants cannot utilize §

233(*l*)(2) to challenge the negative coverage determination. *El Rio*, 396 F.3d at 1272; *K.C.*, 2018 WL 5906057 at *5; *Q.*, 2018 WL 1136568 at *2. The text of § 233(*l*)(2) provides no support for the notion that merely by failing to appear in a State court within the short window of time specified by 42 U.S.C. § 233(*l*)(1), the Attorney General somehow confers on the defendant health center or health center personnel the right to challenge a negative coverage determination after the action has been removed to a United States district court and the Attorney General has appeared in that court and advised it that defendants are not deemed to be employees of the Public Health Service with respect to the actions or omissions that are the subject of the action.

## CONCLUSION

For all the foregoing reasons, it is the United States' position that this action must be remanded back to State court.

DATED this 4th day of February 2019.

<div style="margin-left: 50%;">

Respectfully submitted,

BILLY WILLIAMS
United States Attorney
District of Oregon

JAMES G. TOUHEY, JR.
Director
Torts Branch, Civil Division

*/s/Kevin Danielson*
KEVIN DANIELSON
Assistant U.S. Attorney

*/s/Conor Kells*
CONOR KELLS
Senior Trial Counsel
Torts Branch, Civil Division

</div>