Lᴀɴᴇ Cᴏᴜɴᴛʏ Oғғɪᴄᴇ ᴏғ Lᴇɢᴀʟ Cᴏᴜɴsᴇʟ
Stephen E. Dingle
125 E. 8th Avenue
Eugene, OR 97401
(541) 682-6561
stephen.dingle@co.lane.or.us

Fᴇʟᴅᴇsᴍᴀɴ Tᴜᴄᴋᴇʀ Lᴇɪғᴇʀ Fɪᴅᴇʟʟ LLP
Matthew S. Freedus, DC #475887
mfreedus@ftlf.com
Jonay Foster Holkins, DC #1046329
jholkins@ftlf.com
1129 20th Street NW, 4th Floor
Washington, DC 20036
(202) 466-8960
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SAM FRIEDENBERG, personal representative of the estate of MARC SANFORD; *et al.*,<br><br>               *Plaintiffs*,<br><br>vs.<br><br>LANE COUNTY, *et al.*,<br><br>               *Defendants*. | Case No.: 6:18-cv-00177-MK<br><br>DEFENDANTS' MEMORANDUM IN SUPPORT OF SUBSTITUTION |

Pursuant to the Court's May 23, 2018 Order (ECF 21) and June 6, 2019 Order (ECF 47), Defendants Lane County, Lane County Mental Health, Carla Ayres, Erik Morris, Frances Freund, and Julia Riutzel (collectively, "Lane County") respectfully submits this memorandum in support of their petition for substitution of the United States, along with a statement of

1

material facts (as to which there is no genuine dispute). In compliance with LRs 7-1(a) and 26-3(g), defendants made good faith efforts to resolve the disputed issues but have been unable to do so.

## INTRODUCTION

The purpose of the hearing under § 233(*l*)(2), which is set for October 1, 2019, is to determine "(1) whether Plaintiffs' claims constitute claims for damage or personal injury resulting from the performance of medical or related functions, and (2) whether each defendant was acting within the scope of his or her employment." *Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225-JAW, 2018 BL 501814, *2 (D. Me. Jan. 10, 2018) (Woodcock, J.); *Estate of Campbell by Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113, 116 (3d Cir. 2018) (§ 233(*l*)(2) affords federal jurisdiction to decide whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA").

The first issue is a purely legal one, as it turns on the plain language of 42 U.S.C. § 233(a). Through broad and unequivocal terms, § 233(a) provides Public Health Service (PHS) personnel *absolute* immunity from liability and the burdens of litigation that can "result[] from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation," by making the remedy under the FTCA (*i.e.*, a claim against the United States) "exclusive of *any other* civil action or proceeding by reason of the same subject-matter." 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (holding, unanimously, that "§ 233(a) limits recovery for such conduct to suits against the United States," regardless of whether claim is viable or compensable under the FTCA). To achieve its purpose – that is, to eliminate the need for private malpractice insurance – the scope of § 233(a) immunity is

designed to extend beyond (and thus include) any negligence or professional malpractice claims for which private malpractice insurance might be needed otherwise.

As to the second issue, there is no genuine dispute of fact as to whether defendants were acting within the scope of their deemed federal employment, especially after discovery. As indicated in the accompanying statement of facts, the Lane County employee-defendants – whose conduct is at issue here – were assigned exclusively to, and acting on behalf of, the division of Lane County that operates (and is) its Section 330 health center grant project and is deemed to be a PHS employee for purposes of § 233(a) immunity. Neither plaintiffs nor the United States have produced any fact that shows, much less suggests, otherwise. Instead, the central premise of their respective positions has been that the claim did not result from the performance of "medical . . . or related functions" within the meaning of § 233(a).

If, after reviewing the parties' submissions and statement of facts, the Court determines that there are no genuine disputes as to any material fact, it can proceed to resolve the legal issues and make the required determination under § 233(*l*)(2). But if the Court finds that the pre-hearing submissions reveal a genuine dispute of material fact, such a dispute will have to be resolved at the hearing through the presentation and examination of evidence.

## PROCEDURAL HISTORY

In early 2017, plaintiffs (then as claimants) filed administrative tort claims with the U.S. Department of Health and Human Services (HHS), alleging negligent and wrongful conduct on the part of Lane County Behavioral Health (LCBH) employees. Pl. Doc. Prod (PLT) 1, 6, 9.

In May 2017, in response to plaintiffs' claims, HHS recognized that each claim alleged negligence and malpractice against a deemed health center (LCBH) but denied them on the notion that they are "not compensable under the [FTCA]." PLT 8, 5, 13. In its denial letter, HHS

advised each claimant that if dissatisfied he or she may sue the United States in federal court within six months (statute of limitations). *Id*. Plaintiffs elected not to do so. Instead, they advanced the substance of their administrative claims as a damages action in state court, naming as defendants the Lane County entity and individual Lane County employees they had described as "deemed" in their FTCA claims. *Id*. at 1, 6, 9.

The state action – filed in November 2017 – alleges that defendants failed to: (1) ensure that Michael Bryant followed his treatment plan, (2) medicate Mr. Bryant with anti-psychotic medications, and (3) notify the court of alleged probation violations, and that that malpractice resulted in the deaths of Mr. Bates and Mr. Sanford, and injuries to Mrs. Sanford. *See* ECF 1, (Notice of Removal (NOR)) Ex. B (Amended Complaint).

In November 2017, the Lane County defendants furnished copies of plaintiffs' complaint to the Office of General Counsel (OGC) at HHS and requested coverage. HHS did not "promptly" furnish copies of the pleadings to the Attorney General, the U.S. Attorney for the District of Oregon, and the Secretary of HHS, as required by 42 U.S.C. § 233(b), and the Attorney General did not appear in state court as contemplated by 42 U.S.C. § 233(*l*)(1). ECF 1 at 11-12.

In November 2017, plaintiffs filed an amended complaint, which merely added two sentences in furtherance of their tort theory of liability, alleging that defendants' actions or omissions amounted to a failure to appropriately administer a jail diversion program. That same day defendants learned of plaintiffs' administrative tort claims and their denial. Defendants requested copies of the denials, but HHS declined to provide them. *Id*.

Between late November 2017 and January 2018, defendants responded to HHS's requests for information concerning their then-pending request for coverage, including documentation of

the individual defendants' employee status (with Lane County's deemed health centers). It was not until January 2018 that HHS OGC first advised defendants that their request for coverage was denied. OGC communicated this denial informally and without any meaningful analysis or explanation. The only rationale OGC expressed in support of its decision was that plaintiffs' claims do not arise out of defendants' performance of medical care. OGC did not raise any issue as to whether the alleged acts or omissions occurred within the scope of the defendants' deemed PHS employment. ECF 1 at 12-13.

In January 2018, defendants removed the state action to this Court, with copies to HHS OGC and the local U.S. Attorney. ECF 1.

In February 2018, plaintiffs filed a motion to remand, ECF 9, which defendants opposed. ECF 15. The Court afforded the United States an opportunity to participate at that juncture, but it chose not to do so. ECF 17.

On May 23, 2018, the Court denied the remand motion, and held that "defendants are entitled to a hearing as contemplated by § 233(*l*)(2) for the specific purpose of determining the appropriate forum or procedure for the assertion of plaintiffs' claim for damages." ECF 21 at 7. The Court directed the parties to confer with the United States concerning discovery and briefing schedule for purposes of that hearing. *Id*.

On February 4, 2019, the United States filed a statement of interest. ECF 39. Apart from raising arguments that the Court had already rejected in its May 23, 2018 Order, the United States advanced purely legal arguments under the first prong of § 233(a) immunity – *i.e.*, arguing that defendants' conduct – from which the claim resulted – "was not the provision of a service" and that there is "no remedy" under the FTCA for this type of claim. ECF 39 at 18, 20. The government did not raise any issue as to the second prong of § 233(a) immunity – *i.e.*, whether

the alleged acts or omissions occurred within the scope of the defendants' deemed PHS employment.

Plaintiffs and defendants engaged in discovery without any dispute. The United States refused to participate in discovery.

That precipitated defendants' April 19, 2019 motion to join the United States and otherwise compel its compliance with subpoenas for documents and deposition testimony. ECF 42. By minute entry, the Court held that motion "in abeyance pending the court's ruling following a 233(*l*)(2) evidentiary hearing."

**RELEVANT STATUTORY FRAMEWORK**

Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, Public Health Service (PHS) personnel are afforded absolute immunity from any civil action or proceeding arising out of their performance of medical, dental, surgical, or related functions within the scope of their employment. 42 U.S.C. § 233(a). Section 233(a) makes the remedy for damages against the United States under the Federal Tort Claims Act (FTCA) the exclusive remedy for such actions or proceedings. Id (emphasis added). The grant of absolute immunity to PHS personnel under 42 U.S.C. § 233(a) is broad and comprehensive.

The legislative objective of 42 U.S.C. § 233(a) is to facilitate the provision of medical services in underserved areas by shielding PHS personnel from personal liability arising out of their medical and related duties. Without such protection, the cost of professional liability insurance greatly hinders or even extinguishes the provision of these services. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to

take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), 42 U.S.C. § 233(g) et seq., authorizes the Secretary of the U.S. Department of Health and Human Services (HHS) to extend to certain federally-funded health centers and their officers, directors, and employees (and certain contractors) the same protection that § 233(a) affords to actual PHS employees – i.e., "absolute immunity . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806.

In order to be deemed a PHS employee for purposes of § 233(a) immunity, the FSHCAA requires a health center grantee to submit an application with detailed information and supporting documentation sufficient for the Secretary of HHS to verify that the coverage would apply to all services provided by the health center and its providers to patients and, in certain circumstances to non-patients, of the health center and that the health center meets the four requirements listed in § 233(h). 42 U.S.C. § 233(g)(1)(D) and (h). A favorable deeming determination is "final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding" for a specified prospective period. 42 U.S.C. § 233(g)(1)(F).

When an action is brought against a deemed PHS employee in state court, the deemed PHS employee may remove the case to federal court. Upon removal pursuant to 42 U.S.C. § 233(*l*)(2),[1] all proceedings in the action are stayed, by operation of law, until the federal district

---

[1] Section 233(*l*)(2) is akin to but even more generous than the general officer removal statute at 28 U.S.C. § 1442(a)(1).

7

court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. *Id*. at § 233(l)(2). The hearing allows a deemed individual or entity to assert immunity or challenge an adverse scope of employment determination by the Secretary or Attorney General "with respect to the actions or omissions" that are the subject of the state action or proceeding. Id. at § 233(l)(1). Where, as here, the claims are covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant for them. *Estate of Campbell by Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113, 116 (3d Cir. 2018) (§ 233(*l*)(2) affords federal jurisdiction to order the substitution of the United States when appropriate).

## STATEMENT OF FACTS

The material facts – as to which there is no genuine dispute – are set forth in detail in the accompanying statement. Accordingly, this memorandum reiterates only the most salient facts as to the scope of employment prong of § 233(a) immunity.

The Community Health Centers of Lane County (CHCLC) is the division of Lane County that receives a Section 330 grant to operate a "health center" project (which includes Lane County Mental Health, among other sites). CHCLC and its employees were deemed to be PHS employees for purposes of § 233(a) immunity with respect to the period in which the operative events occurred. (Section 233(a) immunity – like an occurrence-based insurance policy – is concerned with the period in which the operative events occurred, not when the claim (concerning those events) is made). Willis Decl. at 1.

The individually named defendants, at all relevant times, were Lane County employees assigned exclusively to CHCLC's Section 330 health center project (which, as its name suggests, consists of a number of health centers, including LCBH). They did not work for any division of

8

Lane County other than CHCLC. Their conduct – which resulted in the complaint – occurred within the scope of their CHCLC assigned duties, and on behalf of and in furtherance of its Section 330 project. Willis Decl. at 3-4; Ayres Decl. at 5-7; Riutzel Decl. at 1-3.

All of the activities at issue are "grant-supported activities" or "related to grant supported activities" within the meaning of the HHS's regulations. 42 C.F.R. 6.6(d) (implementing the Federally Supported Health Centers Assistance Act of 1992, which authorized the Secretary of HHS to extend the PHS Act's § 233(a) immunity to certain deemed PHS employees). Willis Decl. at 4-5.

CHCLC included the named defendants' entire Lane County compensation in its Section 330 budget, which HRSA reviewed and approved. CHCLC also included, within its HRSA-approved budget and project, the state and local grant funds it received to support its mental health activities in collaboration with local criminal justice systems (known as jail intercept or diversion programs). Finally, CHCLC included all revenue from those mental health services activities as program income, in furtherance of its Section 330 project. Willis Decl. at 3-4.

Mr. Bryant accessed mental health services from CHCLC. ECF 1, Ex. B (complaint referencing Lane County Mental Health staff and their services); Willis Decl. at 7; Ayres Decl. at 3-6; Riutzel Decl. at 3-5. As a Section 330 grantee and covered entity within the meaning of HIPAA, CHCLC had a duty to maintain the confidentiality of his health information. Ayres Decl. at 2-3; Riutzel Decl. at 6. CHCLC also has duties to disclose such confidential information (as exceptions to the rule) under certain circumstances (such as a patient authorization to disclose or *Tarasoff* situations).[2] Ayres Decl. at 3; Riutzel Decl. at 6.

---

[2] *Tarasoff v. Regents of University of California*, 551 P.2d 334, 340 (1976) is the landmark decision of California Supreme Court which held that "[w]hen a therapist determines ... that his patient presents a serious danger of violence to another, he incurs an obligation to use

9

Mr. Bryant was not required to execute an authorization to release his patient health information to the court, law enforcement, or anyone else, as a condition of his court-ordered criminal sentence or probation. The court that imposed his sentence retained the probation function with respect to Mr. Bryant.

**ARGUMENT**

**Section 233(a) immunity extends to any claim – by patients or non-patients –arising out of the performance of medical or related functions**

**A. Section 233(a) immunity applies broadly to medical or related functions**

In clear and unequivocal language, § 233(a) affords absolute immunity with respect "*any*" civil action or proceeding arising out of the "performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation" within the scope of employment. 42 U.S.C. § 233(a), (g); *Hui*, 559 U.S. at 806.

The term "related functions" is a clear signal of the breadth of the immunity as it expands the set of functions (medical, surgical, or dental) to include ancillary functions. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (ordinary usage of words "related to" means to broaden and expresses a broad purpose). The one example of a "related function" specified under § 233(a) – "the conduct of clinical studies or investigations" – underscores that breadth. There is "nothing in the language of § 233(a)" to support the notion that it "provides immunity only from medical malpractice claims." *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (*Hui* sided with *Cuoco* in resolving the circuit split between Cuoco and the Ninth Circuit's decision in *Hui*); *see also Z.B. ex rel. Next Friend v. Ammonoosuc Community Health Services*,

---

reasonable care to protect the intended victim against such danger"). *See also* 2015 ORS 40.353, Rule 504-5 (requiring mental health providers to report patient communications that reveal "a clear and serious intent" to "commit a crime involving physical injury, a threat to the physical safety of any person, sexual abuse or death").

Inc., 2004 WL 1571988, *4 (D. Me. June 13, 2004) (phrase "related to" in agency regulation – 42 C.F.R. § 6.6(d) recognizes that § 233(a) immunity extends beyond the mere act of providing medical care).

It is significant to note that, at the urging of the United States as *amicus*, *Hui* construed § 233(a) as providing an absolute immunity from a broad range of professional negligence and malpractice claims, regardless of the legal theory of liability. There, the United States argued that § 233(a) "does not refer solely to actions based on the common law or sounding in negligence." The United States correctly pointed out that "[t]he term 'malpractice,' in particular, refers *not* to a specific type of legal theory or claim, but rather to underlying conduct – *i.e.*, the professional misfeasance that may give rise to a cause of action." U.S. Amicus Curiae Br., 2009 WL 4759119 (U.S.), **12-13 (U.S. 2009).

Consistent with the argument advanced by the United States, the Supreme Court found that § 233(a)'s broad, expansive language "easily accommodates both known and unknown causes of action." *Hui*, 559 U.S. at 806. *Hui* illustrates that very point because § 233(a) was enacted before *Bivens* was handed down.

In reaching its unanimous decision, *Hui* looked to "[t]he breadth of the words 'exclusive' and 'any,'" as well as "the provision's inclusive reference to all civil proceedings arising out of 'the same subject-matter.'" *Id*. Ultimately, the Court found that § 233(a) immunity is not limited to medical negligence causes of action, but instead captures any civil damages action or proceeding alleging professional misfeasance or dereliction (including constitutional claims) that arise out of the performance of medical or related functions. *See id*. at 799-800.

Since *Hui*, a number of district courts have recognized that § 233(a) immunity covers claims arising out of a variety of "related functions." For example, in *Kezer v. Penobscot*

*Community Health Center*, 15-cv-225-JAW, 2019 BL 141566 (D. Me. Mar. 21, 2019), the court had to determine whether the defendants, who accessed the plaintiff's confidential mental health records for purposes of quality assurance audits, were performing a "related function." The United States, participating as an interested party, argued "that § 233 immunity is limited to claims arising from direct medical treatment," and that a quality assurance audit for operational purposes is beyond the purview of § 233(a). Id. at *7-8. Noting the absence of any supporting authority for the government's position, the court disagreed and embraced the commonsense notion advanced by defendants – *i.e.*, "the performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services. Indeed, the whole point is to review the quality of previously rendered services to improve the quality of future services."

In support of its conclusion, *Kezer* noted other operational duties of deemed health centers which courts found to be to be within the scope of § 233(a)'s "medical . . . or related functions." *Id*. (citing *Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017) (patient's negligent hiring and supervision claim against a deemed health center fell within scope of § 233(a) immunity because "hiring and retention of . . . physicians is directly connected to [the] provision of medical care"), and *De La Cruz v. Graber*, No. CV 16-1294 VBF (AS), 2017 WL 4277129 (C.D. Cal. June 15, 2017), report and recommendation adopted, 2017 WL 4271122 (C.D. Cal. Sept. 21, 2017) (medical administrator, whose performance of administrative duties gave rise to constitutional tort claim, was immune under § 233(a)).[3]

---

[3] *See also Mele v. Hill Health Center*, No. 3:06-cv-00455, 2008 WL 160226 at * 3 (D. Conn. Jan. 8, 2008) (plaintiff's claim that defendant improperly disclosed medical information to third parties "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and, therefore, were "covered by section 233(a)"); *Pomeroy v. United States*, No. 17-1021, 2018 WL 1093501 (D.C. Ma. Feb. 27, 2018)

In *Teresa T. v. Regaglia,* 154 F. Supp. 2d 290 (D. Conn. 2001), a case analogous to this one, the court determined that a physician's duty to report potential child abuse is a "related function to the doctor's performance of medical services." The court reasoned that statutory duty to report suspected child abuse, which is imposed on Connecticut doctors when acting in their "professional capacity," was triggered when the physician conducted a "medical examination" of the child. Thus, the claim that the physician violated that duty necessarily resulted from his medical or related functions. *Id*. at 300.[4]

### B. The claim resulted from covered conduct – *i.e.*, the performance of medical or related functions

Not only does the language of § 233(a) precludes a narrow construction, but it easily encompasses the *conduct* of the defendants.

Plaintiffs admitted as much through their own words and actions. Based on their own initial assessment of that conduct, they filed their claims under the FTCA, noting the "deemed" federal status of defendants. Moreover, their state action, based on the *same* conduct, is literally

---

(Casper, J.) (deemed health center's negligent execution of a treatment plan qualifies as a "related function" under § 233(a) when nurse, contrary to plan, provided solid food to a patient with a known swallowing disability) (rejecting United States position that "food services" or the "negligent provision of food" is not a medical or related function); *Pinzon v. Mendocino Coast Clinics Inc.*, No. 14-CV-05504-JST, 2015 WL 4967257, at *1 (N.D. Cal. Aug. 20, 2015) (§233(a) extends beyond medical negligence claims, and covers claim by patient against a deemed entity for alleged violations of the Americans with Disabilities Act, HIPAA, and Civil Rights Act of 1964) (*citing* Hui, 599 U.S. at 806)).

[4] Here, without citing any specific authority, plaintiffs claim that defendants had and breached a duty to report Mr. Bryant's noncompliance with their treatment plan or "directives," as a probation violation. It is important to note § 233(a) immunity does not depend on the merits or viability of a claim, much less its availability under the FTCA. *Hui,* 559 U.S. at 806. If a claim (compensable or not) results from the performance of medical or related functions, it is covered by § 233(a). At this stage, the Court need not determine whether Mr. Bryant qualified as noncompliant and whether Oregon mental health professionals have a legal duty to report perceived probation violations of their patients (without evidence of clear and serous intent to cause harm). Those issues are for a later stage of the litigation process, after the threshold immunity determination is made.

couched in terms of *functions* which defendants performed or allegedly failed to perform in the course and scope of their CHCLC employment. And each function plaintiffs reference is either itself a medical function or, at the very least, a related function: (1) prescribing a mental health treatment plan for a patient and ensuring (or failing to ensure) that the patient follows it, (2) prescribing (or failing to prescribe) medication to treat the diagnosed (or misdiagnosed) mental health condition and ensuring that the patient is taking the medication as prescribed; and (3) maintaining confidential mental health records (or, disclosing them or failing to disclose them, to third parties when authorized and required to do so). ECF 1, Ex. B at pp. 3-15.

Those functions are well within the "medical or related functions" of a community-based mental health provider, especially one which is *statutorily obligated* to "coordinate and integrate project activities [such as mental health services] with the activities of other federally-funded, as well as State and local, health services delivery projects and programs serving the same population."[5]

The development of a treatment plan for a mental health condition, prescribing medication, and maintaining the confidentiality of patient information are quintessentially "medical" functions or, at the very least, "related functions" that health centers and their providers perform on a daily basis. Ayres Decl. at 2-3, 5-6. Indeed, those functions are among the grant-supported activities health centers are required to perform by the very statute that authorizes their grant and controls their grant supported activities. 42 U. S.C. § 254b(b)(1)-(2) (required services include pharmaceutical services and additional services include behavioral and

---

[5] *See* Health Center Program Compliance Manual, Ch. 14 Collaborative Relationships, available at https://bphc.hrsa.gov/programrequirements/compliancemanual/chapter-14.html (last visited June 5, 2019) (emphasis added) (implementing the statutory and regulatory requirements of 42 U.S.C. § 254b(k)(3)(B) and 42 C.F.R. § 51c.102(c)(1), respectively).

14

mental health services appropriate to meet the needs of the patient population served by the health center), 254b(k)(3)(C) (requiring health center grantees to "have an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records"). It is the receipt of that federal grant, and the obligations that come along with it, that make a health center and its personnel eligible to be deemed PHS employees in the first place. 42 U.S.C. § 233(g)(4).

### C. The position of plaintiffs is fundamentally flawed

In their remand motion, plaintiffs insisted that § 233(a) is to be narrowly construed and covers only traditional or garden variety medical negligence claims by patients. ECF 9 at 4-8.

That argument rests on two fundamental flaws. First, they misperceive § 233(a) as a *limited waiver of the sovereign*'s immunity under the FTCA. It is axiomatic that waivers of sovereign immunity – such as the FTCA – are to be strictly construed. But that is not what § 233(a) is. It is neither a provision of the FTCA, nor a waiver of sovereign immunity. Instead, it is a *grant* of absolute immunity – as an individual federal right to be free from liability and the burdens of litigation – regardless of the scope of the exclusive remedy (FTCA).

As the Supreme Court made clear, the scope of a deemed federal employee's broad and comprehensive immunity provided by § 233(a) is *not* "coextensive" with the scope of the United States' narrow waiver of sovereign immunity under the FTCA. These two principles are logically and legally distinct. *Hui,* 559 U.S. at 806. Likewise, the scope of § 233(a) immunity does not depend on whether the claim advanced is a viable one (or not, as in *Hui*, because FTCA does not waive sovereign immunity for the constitutional torts of its employees).

Second, nothing in § 233(a)'s text nor case law can be read to limit absolute immunity to claims brought by only patients. Indeed, the United States has, on its own initiative, substituted

15

itself as the defendant in cases where the plaintiff alleging personal injury was not a patient of the health center. *See Z.B. ex rel. Next Friend v. Ammonoosuc Cmty. Health Servs.*, Inc., 2004 WL 1571988, at *3 (D. Me. June 13, 2004) (United States voluntarily substituted itself as defendant in case brought by an injured non-patient, where a non-patient child was harmed by his father as a result of a provider's failure to report suspected child abuse); *see also Hayes v. United States*, No. 16-cv-131 (APM) (D.D.C 2016) (United States defended a "failure to warn" action brought by a non-patient inmate against a deemed health center rendering mental health services to a patient, who was allowed into general population and physically attacked plaintiff).

What matters is that the alleged harm resulted from the deemed defendants' performance of medical or related functions while acting within the scope of their employment. There is no legitimate dispute that the alleged harm to plaintiffs resulted from the deemed defendants' performance of medical and related functions with respect to Mr. Bryant, an established patient of CHCLC.

## CONCLUSION

For the foregoing reasons and those previously stated, the Court should order the substitution of the United States in place of the named defendants.

DATED: June 19, 2019

LANE COUNTY OFFICE OF LEGAL COUNSEL

Stephen E. Dingle
Stephen.DINGLE@co.lane.or.us
125 E. 8th Avenue
Eugene, OR 97401
(t)(541) 682-6561
(f) (541) 682-2083

FELDESMAN TUCKER LEIFER FIDELL LLP

/s/ *Matthew S. Freedus*
Matthew S. Freedus (DC 475887)

mfreedus@ftlf.com
Jonay Foster Holkins (DC 1046329)
jholkins@ftlf.com
1129 20th Street NW, 4th Floor
Washington, DC 20036
(*t*) (202) 466-8960
(*f*) (202) 293-8103

*Attorneys for Defendants*