UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SAM FRIEDENBERG, personal representative of the estate of MARC SANFORD; DEREK LARWICK, personal representative of the estate of RICHARD BATES; and LORRE SANFORD, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LANE COUNTY; LANE COUNTY MENTAL HEALTH aka LANE COUNTY BEHAVIORAL HEALTH; CARLA AYRES; ERIK MORRIS; FRANCES FREUND; and JULIE RIUTZEL,<br><br>Defendants. | Case No.: 6:18-cv-00177-MK<br><br>FINDINGS AND RECOMMENDATION<br><br>RE: APPLICABILITY OF 42 U.S.C. § 233(a) IMMUNITY; DEFENDANT'S MOTION TO JOIN THE UNITED STATES AND COMPEL ITS COMPLIANCE |

**KASUBHAI, Magistrate Judge:**

Pursuant to Judge Russo's Order of May 23, 2018, the Court conducted a 42 U.S.C. § 233(l)(2) hearing on October 1, 2019 for the specific purpose of determining whether to

1 – FINDINGS AND RECOMMENDATION

remand this case or to substitute the United States as a party and deem the action as one brought under the Federal Torts Claims Act ("FTCA"). *See* Order 7, ECF No. 21. Prior to the § 233(l)(2) hearing, Defendants filed a Motion to Join the United States and Compel its Compliance with Subpoenas for Documents and Deposition Testimony ("Motion to Join and Compel"). ECF No. 42.

For the reasons set forth below, this case should be **REMANDED** to state court, and Defendant's Motion to Join and Compel (ECF No. 42) should be **DENIED** as moot.

## BACKGROUND

After a criminal conviction in Oregon state court, Michael Bryant ("Bryant") was placed in a community diversion program known as Jail Intercept Program[1] (the "Program") and ordered him to "follow all directives from LCMH [Lane County Mental Health]" as a term of his probation. Notice of Removal, Ex. B, First Am. Compl. ¶ 12; Ex. E Municipal Court Judgment and Sentence Order, p. 2, ECF No. 1. During his time at LCMH, Bryant was under the care of the individual Defendants for mental health services. Notice of Removal, Ex. B, First Am. Compl. ¶¶ 13-48; Riutzel Decl. ¶¶ 4, 6-10, ECF No. 50-3. Plaintiffs allege that "LCMH and its employees and agents did not ensure that Bryant took his medications or otherwise report his serial malfeasance and reluctance to receive therapeutic and medication treatment to the court, and as a result," Bryant had a severe psychotic break, committed three homicides and injured two other individuals. Notice of Removal, Ex. B, First Am. Compl. ¶ 49. Plaintiffs are one of the injured persons and personal representatives for two of the decedents. *Id.* ¶¶ 54, 58, 63.

Plaintiffs filed a state court action at Lane County Circuit Court, Case No. 17-CV-49617, against Lane County, LCMH and their three employees, alleging wrongful death and personal

---

[1] The parties also refer to it as Jail Diversion Program.

injury caused by Defendants' negligence in managing the Program. *Id.* ¶ 52. After filing an answer, Defendants removed the state action to this Court under 42 U.S.C. § 233(l)(2), claiming that the United States should be substituted as the only proper defendant. Notice of Removal, 1-17, Ex. C Answer, ECF No. 1. Defendants assert that Lane County receives federal funding under Section 330 of the Public Health Service ("PHS") Act (codified at 42 U.S.C. § 254b) to operate several community health centers. Notice of Removal, ¶ 3, ECF No. 1. Defendants further assert that LCMH's employees are "deemed" PHS employees based on documentation provided to them by the Secretary of the United States Department of Health and Human Services ("HHS"). Notice of Removal, ¶ 3, Ex. D at 4, ECF No. 1. Defendants contend that this designation affords LCMH employees the same immunity afforded to PHS employees pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"). *See* 42 U.S.C. §§ 233(a), (g).

Plaintiffs then filed a Motion for Remand to State Court, citing lack of jurisdiction by this Court because the claims are "purely based on state common law negligence and there is no diversity between the parties." Pl.'s Mot. for Remand, ECF Nos. 9, 9-1. The Court found that Defendants "have made a sufficient showing [that] they are entitled to a § 233(l)(2) hearing." Order 6, ECF No. 21. The Court denied Plaintiffs' Motion for Remand and ordered a § 233(l)(2) hearing "for the specific purpose of determining the appropriate forum or procedure for the assertion of [P]laintiffs' claim for damages." *Id.* at 7.

Prior to the § 233(l)(2) hearing, the United States filed a Statement of Interest (ECF No. 39), and Defendants filed the Motion to Join and Compel (ECF No. 42). The Court ordered Defendants' Motion to Join and Compel in abeyance pending ruling following the § 233(l)(2) hearing. Minute Order, ECF No. 43. Plaintiffs and Defendants submitted briefs and presented

oral arguments for the hearing. ECF Nos. 48, 50, 61 & 62; Minutes of Proc., ECF No. 63. The United States appeared at the hearing as an interested party and presented oral argument. Minutes of Proc., ECF No. 63.

## STANDARD OF REVIEW

A defendant may remove an action filed in state court to federal court if there is diversity or federal question jurisdiction. 28 U.S.C. §§ 1441(a), 1441(b). Upon a motion to remand, a federal court may remand a case to state court for lack of subject matter jurisdiction at any time before the court issues a final judgment. 28 U.S.C. § 1447(c). The party opposing the motion for remand has the burden of establishing federal jurisdiction. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

## DISCUSSION

### I. Statutory Framework

As a general principle, the United States "may not be sued without its consent...." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The FTCA, however, provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). Moreover, the FTCA provides that a suit against the United States is the exclusive remedy for these sorts of claims. 42 U.S.C. § 2679 ("Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded.").

The FSHCAA, 42 U.S.C. § 233, extends the application of the FTCA to certain public health entities, their employees, and qualified contractors receiving federal grants under 42

U.S.C. § 254b. 42 U.S.C. §§ 233(g)(1)(A)-(B). The entities typically covered by the FSHCAA are community health centers that receive federal grants to serve underprivileged populations regardless of their ability to pay for service. H.R. Rep. No. 104-398 at 5 (1995). Congress enacted the FSHCAA to prevent these community health centers from having to use their federal funds to purchase costly medical malpractice insurance—"one of the most significant expenses for health centers." *Id.* At the time of the FSHCAA's enactment, community health centers were utilizing a large percentage of their federal funds to pay for malpractice insurance premiums, and Congress sought to redirect these funds towards patient care. *Id.* at 6. Thus, the FSHCAA broadened the FTCA to include these community health centers, thereby granting them and their employees "absolute immunity ... for actions arising out of the performance of medical or related functions within the scope of their employment ... [and] limit[ing] recovery for such conduct to suits against the United States." *Hui v. Castaneda*, 559 U.S. 799, 806, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010).

For an entity to be covered under the FSHCAA, it must be deemed an employee of the PHS by the Secretary of HHS. 42 U.S.C. §§ 233(g)-(h). HHS makes this determination after reviewing an entity's application and assessing whether or not it meets certain qualifications. 42 U.S.C. § 233(h). In particular, HHS is not authorized to deem an entity a PHS employee unless it first determines that the entity has done the following: "implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity," and "has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners...." *Id.*

Furthermore, even if an entity is deemed a PHS employee, the FSHCAA's grant of immunity to the entity is still limited to claims "arising out of the performance of medical or related functions." *Hui*, 559 U.S.at 806, 130 S.Ct. 1845; 42 U.S.C. § 233(a). Specifically, Section 233(a) of the FSHCAA provides:

> The remedy against the United States provided by [The Federal Torts Claims Act] ... for damage for personal injury, including death, *resulting from the performance of a medical, surgical, dental, or related functions* ... by any commissioned officer or employee of the [PHS] while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a) (emphasis added). Section 233(g)(1)(B) of the FSHCAA provides:

> The deeming of any entity or officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to *services provided* —
>
> (i) *to all patients* of the entity, and
>
> …

42 U.S.C. § 233(g)(1)(B) (emphasis added).

**II. Scope of § 233(a) Immunity**

The parties dispute whether Defendants' alleged conduct falls within the scope of § 233(a) immunity. Plaintiffs contend that § 233(a) does not afford protection to Defendants' negligent conduct because: (1) Defendants' negligence and the resultant injury did not arise in the omission or provision of medical treatment, and (2) Defendants' negligence in managing the Program falls outside the scope of the Section 330 grant. Pls.' Reply 5-15 (ECF No. 61); *see* Pls.' Br. 6-18, ECF No. 48. Defendants' argue that they are deemed employees and their performed functions are medical or related functions within the scope of § 233(a) protection. Defs.' Br., ECF No. 50; Defs.' Reply, ECF No. 62.

Cases involving § 233(a) in the Ninth Circuit and this district do not address the issue of the scope of § 233(a) coverage. *Castillo v. United States*, 707 F.2d 422 (9th Cir. 1983) (without addressing the language of § 233, the Ninth Circuit found that § 233, read in conjunction with the plaintiff's employment contract, provides legal representation by the government for a National Health Service Corps doctor who was a member of a peer review committee that restricted the plaintiff physician's surgical practice.); *Estes v. United States*, 302 Fed.Appx. 563, 564 (9th Cir. 2008) (the Ninth Circuit dismissed the plaintiff's claims on other grounds but stated that "Under the FSHCAA, the … FTCA … provides the exclusive remedy for medical malpractice by a health care provider who falls within the definition of 42 U.S.C. § 233(g)"); *Sierra v. Lincoln Family Medicine*, 2008 WL 5068807, at * 3 (D. Or. 2008) (the court found that plaintiff's exclusive remedy under the FTCA is against the United States, stating that "If an entity has been deemed a Public Health Service employee, then a plaintiff's exclusive remedy for medical malpractice is against the United States under the FTCA. 42 U.S.C. §§ 233(a) and (g).").

Other circuits and district courts, however, have grappled with the exact scope of the coverage under § 233(a). Typically, cases involving § 233(a) arise out of the injury of a patient or an employee as a result of a deemed health center's practice. In a case before the First Circuit, the plaintiff, a former employee, sued a hospital and its administrators and doctors for race and sex discrimination. *Mendez v. Belton*, 739 F.2d 15, 17 (1st Cir. 1984). The First Circuit declined to extend § 233(a) coverage for the claims arising from the employment discrimination dispute, reasoning that the FSHCAA protects PHS employees from "suits that sound in medical malpractice," and the plaintiff's claim of discrimination in the professional review process "is not the sort of malpractice claim that 42 U.S.C. § 233(a) … meant to protect against." *Id.* at 19-20.

The district court in the Western District of Virginia also declined to extend § 233(a) coverage to an employment-related dispute, where the plaintiff sued her employer medical center and the physicians who worked at the medical center for fraudulently using her name and identification to write prescriptions. *Logan v. St. Charles Health Council*, No. 1:06CV00039, 2006 WL 1149214, at *1-2 (W.D. Va. May 1, 2006). Although the court found that "neither the language of the statute nor the relevant case law support that construction limiting § 233 only to medical malpractice cases[,]" the court agreed with the plaintiff that "the facts particular to this case render it outside the scope of what Congress plainly intended to cover in § 233(a)." *Id.* The court elaborated:

> the statute was intended to cover injuries arising out of the doctor-patient relationship, rather than those arising from an employment relationship. While the particular language of § 233(a) does not expressly refer to malpractice cases, language in subsequent sections indicates that the statute's intent is to provide coverage for patient-related claims. *See* 42 U.S.C.A. § 233(g)(2) ("If ... a cause of action is instituted against the United States pursuant to this section, any claim ... for benefits under an insurance policy with respect to *medical malpractice* ... shall be subrogated to the United States .") (emphasis added); § 233(h)(1) ("The Secretary may not approve an application ... unless ... the entity has implemented appropriate policies and procedures to reduce the risk of malpractice [or] ... lawsuits arising out of any health or health-related functions."); § 233(n)(1)(A), (D) (Risk exposure report required on "[t]he medical malpractice liability claims experience of entities that have been deemed employees" and "[a] comparison of the costs and the benefits to taxpayers of maintaining medical malpractice liability coverage for such entities.").

*Id.*

Like the district court for the Western District of Virginia, the Second Circuit also found that "there is nothing in the language of § 233(a) to support" "that § 233(a) provides immunity only from medical malpractice claims." *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000). In *Cuoco*, the plaintiff, a prisoner, brought a constitutional claim – not a medical malpractice claim – against the prison doctors and other medical staff for refusing to authorize estrogen treatments for the plaintiff. *Id.* at 104. The Second Circuit held that § 233(a)'s absolute immunity applies to

8 – FINDINGS AND RECOMMENDATION

the plaintiff's constitutional claim because the defendants were acting within the scope of their employment as a doctor and a medical official. *Id.* at 109.

When the deemed community health center La Casa de Buena Salud ("La Casa") sought § 233(a) immunity from a suit claiming negligent hiring, supervision and retention of a doctor, brought by the estate of a patient who was murdered by the doctor, the court in that case explained:

> While negligent hiring, supervision, and retention of medical staff may sometimes be related to the provision of medical services, and thus medical malpractice, here there is no allegation that the [murder of the patient was] in any way related to the provision of medical treatment or medical care. Unless the events giving rise to the action are related to the provision of medical services, the Court is not convinced that the activity is a "related function."

*La Casa de Buena Salud v. United States*, No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *18 (D.N.M. Mar. 21, 2008).

The district court of Connecticut reviewed a case bought by minor children, who claimed that a physician and his employer medical center were negligent by failing to report child abuse of these children. *Teresa T. v. Ragalia*, 154 F.Supp.2d 290, 293 (D. Conn. 2001). The court held that a physician's duty to report suspected child abuse, as mandated by state statute, was "inextricably woven" into the performance of medical functions and therefore covered under § 233(a). *Id.* at 300.

In another case where the plaintiff claimed negligent hiring, supervision and retention, the court found that the claim was a related function to the provision of medical services under the facts as alleged and that § 233(a) coverage applies. *Brignac v. United States*, 239 F.Supp.3d 1367, 1377 (N.D.Ga. 2017). There, the plaintiff was sexually assaulted by the Family Health Center's doctor who had an admitted record of sexually assaulting patients when employed as a physician. *Id.* at 1371. The court reasoned:

> The hiring and retention of its physicians is directly connected to its provision of medical care. For instance, to become a deemed entity in the first place, Family Health Centers is required to show that it has "reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners." 42 U.S.C. § 233(h). Section 233(h) can be viewed as "add[ing] a required element" to the provision of medical care by Family Health Centers. *Teresa T.*, 154 F.Supp.2d at 299. Hence, Family Health Center's obligations under Section 233(h) for vetting its physicians are "inextricably woven into [its] performance of medical functions." *Id.* at 300.

*Id.* at 1377.

Plaintiffs note that "typically, cases involving Section 233(a) arise when a patient sues an entity or its employee for injuries resulting from medical treatment[.]" Pls.' Reply 10, ECF No. 61 (citing *Brignac*, 239 F. Supp. 3d at 1370). Plaintiffs argue that the language "services provided to … patients" in § 233(g)(1)(B) bars Defendants' invocation of § 233(a) immunity. Pls.' Reply 3-4, ECF No. 61. Disputing the "patient" requirement to invoke § 233(a) immunity, Defendants rely on two cases where the United States is a named defendant or voluntarily substituted defendant when the plaintiff alleging the injury was not a patient of the health center. Defs.' Br. 15-16, ECF No. 50 (citing *Hayes v. United States*, 2016 WL 3465950 (D.D.C 2016) (an inmate placed in the general population was attacked by a mentally ill inmate who had been hospitalized at a health center; the United States defended the case.); citing *Z.B. ex rel. Next Friend v. Ammonoosuc Cmty. Health Serv., Inc.*, 2004 WL 1571988, at *1-3 (D. Me. June 13, 2004) (the United States moved to substitute itself as the defendant in a case arising out of a non-patient child who was harmed by his father as a result of a provider's failure to report suspected child abuse.)).

In *Hayes*, the United States was a named defendant and the issue of the scope of § 233(a) protection was not before the court. *See Hayes*, 2016 WL 3465950. *Hayes* is inapposite. In *Z.B.*, the medical center provided home visiting services to its patient, the child's mother, and the

home visiting services "were provided *only because* of the existence of the child." *Z.B.*, 2004 WL 1571988, at * 3 (emphasis added). Like in *Teresa T.*, state law in the case of *Z.B.* required a registered nurse to report suspected abuse or neglect of a child. *Id.* The court cited *Teresa T.* and found that the "negligence is 'related to' the provision of medical services because the duty to report arises out of the employees' status as medical professionals." *Id.*

The district court in the Eastern District of Pennsylvania recognized that "[a]lthough the statute draws a distinction between services provided to patients and non-patients for purposes of FTCA coverage, it does not define the term 'patient.' " *Estate of Booker v. Greater Philadelphia Health Action, Inc.*, 10 F. Supp. 3d 656, 669 (E.D. Pa. 2014). There, the court held that "the requirement of providing services to health center patients is met when a patient-provider relationship is established[.]" *Id.* at 669. The court found that the plaintiff employee "plainly accessed care" at the health center, she was part of the population the health center served under its Section 330 grant and in fact was a registered patient of the health center. *Id.* The court concluded that the plaintiff employee who received services as part of the Employee Health Program was a "patient" within the scope of the § 233(a) coverage. *Id.*

In contrast to the plaintiffs in *Z.B.* and *Estate of Booker*, Plaintiffs in this case are not Defendants' patients, they never accessed Defendants' services, and they were not the reason why Defendants provided services to their patient, Bryant. In fact, nothing in the record indicates that Plaintiffs were remotely related to Defendants' services to Bryant. Therefore, Plaintiffs are not the "patient" within the meaning of § 233(g)(1)(B) and their claims cannot be the type of claims Congress intend to cover under § 233(a).

For these reasons, the Court should find that § 233(a) immunity does not shield Defendants from Plaintiffs' claims. Accordingly, the Court should remand this case to state court and should deny Defendants' Motion to Join and Compel as moot.

## RECOMMENDATION

For the reasons explained above, this case should be REMANDED to state court and Defendant's Motion to Join the United States and Compel its Compliance should be DENIED as moot.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 6th day of November 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge